IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

LORI MCGREGOR.,

   *Plaintiff*,

vs.

CITY OF NEODESHA, KANSAS, *et al*.,

   *Defendants*.

Case No. 22-1033-EFM

**MEMORANDUM AND ORDER**

  Following a theft report by employees of Casey's General Store in Neodesha, Kansas, Plaintiff Lori McGregor was arrested by Neodesha Police Officer Ryan Miller. Appearing pro se, Plaintiff brings federal civil rights claims under 42 U.S.C. § 1983, and various Kansas tort claims, against Casey's, Miller, and the City of Neodesha. After Defendants moved to dismiss the Complaint, Plaintiff moved to amend. For reasons explained below, the Court finds that the action should be dismissed.

**I.  Factual and Procedural Background**

  In her original Complaint, Plaintiff alleged that on January 9, 2020, Defendant Miller arrested her as she left the Casey's General Store in Neodesha, Kansas, and that she was charged with theft and illegal parking. She was transported to the Wilson County Jail where she was "detained for several hours in freezing conditions." She posted bond several hours later, and also

had to pay "substantial monies" to obtain the return of her impounded car. The charges against her were subsequently dismissed.

Plaintiff sought recovery against the City of Neodesha, Officer Miller, and Casey's General Store citing (1) both 42 U.S.C. § 1983 and § 1985, (2) "the Kansas Common Law of False Arrest and Imprisonment, Assault and Battery, Malicious Prosecution, and Abuse of Process, and the Tort of Outrage," and (3) "the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution, and Section 15 of the Bill of Rights of the Constitution of the State of Kansas." Beyond this, however, Plaintiff's allegations of excessive force, false arrest, abuse of process, unlawful search, arrest without probable cause are utterly conclusory.

Defendants Miller and the City moved to dismiss the action under Fed. R. Civ. Pr. 12(b)(6), as Plaintiff's § 1985 claim makes no allegation of any parties acting in concert, and no allegation such parties acted on the basis of her race. They argue that any official capacity claim against Miller is superfluous to her claim against the City, and that any individual action against Miller or against the City, fails because Plaintiff offers no specifics to support her federal claims of excessive force, false arrest, or abuse of process. They argue neither the claims of outrage nor violation of a state constitution are cognizable under § 1983. Plaintiff's remaining claims are also conclusory.

Plaintiff filed a Response to the motions to dismiss coupled with a Motion to Amend her Complaint. The proposed Amended Complaint, her attached affidavit, and her Response provides some additional details to her story, although the details vary slightly.

According to her most recent pleadings, Plaintiff is now 63 years old. According to Plaintiff, she bought $20.00 worth of gasoline at the store on January 8, 2020, but later found her debit card had been charged $36.92.

According to a probable cause affidavit later completed by Defendant Miller, the same day the store called police to report that an unknown woman "had been caught on camera stealing a set of keys." Officer Meyer responded to the call, watched the video, and asked for a copy.

The next day, Plaintiff went to the store to dispute the charge. She was polite when she explained the situation to a store employee. She gave the employee her store receipt, a printout of her bank account transactions, and her debit card. The employee went into a back room to call the company headquarters.

During this time, "the same assistant manager who had worked when the keys had been taken," called police to report that the woman "who stole the keys, had returned to the store."

After about 15 minutes, the store employee returned and gave Plaintiff a Casey's corporate phone number to call. Plaintiff was leaving as Officer Miller arrived. He followed her and asked if he could talk to her. When she turned around, he asked if she had taken some keys.

Plaintiff said, "I have my keys."

Plaintiff's proposed Amended Complaint states that she "did not try to run" from Miller; her Response states that after answering Miller's question, "she moved away from him."

Miller physically restrained her with this arms, knocking her purse from her arms. Plaintiff emphasizes that Officer Miller had not warned her she was about to be arrested, and had not asked for identification.

Plaintiff was wearing a winter coat, and Officer Miller took everything out of her pockets, including her receipts and the phone number she was to call.  According to Plaintiff, these receipts were never returned to her.  Officer Miller searched her physically.  He then handcuffed her.

At the time, Plaintiff was "very weak, dizzy, and fevered from an extreme flu."  She did not threaten Officer Miller.

Officer Miller took Plaintiff's car keys and, with another store employee searched it.  Plaintiff had parked her car across the street, about 50 feet from the store entrance.  Plaintiff emphasizes that her car was not parked on Casey's property.  Officer Miller came back to the store with several key rings in his hand.

He placed Plaintiff in the back of his police car, and then went into the store.  Plaintiff waited for about an hour, and was uncomfortable and  "very miserable" from her restraints, "with pain to my neck and spine, wrists and arms."

Miller drove Plaintiff to the police station where she was photographed and fingerprinted.  According to Plaintiff, Miller "threatened me with indefinite jail time as I would not get of jail at all unless I started answering questions."  Plaintiff does not explain what these questions were.  Plaintiff agreed to identify herself, but "did not want to answer anything."  She believes Miller was "bullying in personality in his manner."

Defendant Miller took Plaintiff to be booked at the Wilson County Jail in Fredonia, Kansas.  Plaintiff was charged with theft under K.S.A. 21-5801, interference with a law enforcement officer in violation of K.S.A. 21-5904, and illegal parking in violation of  K.S.A. 8-1571.

A jail employee took Plaintiff's coat, and she was placed for several hours in "a very cold concrete cell." The cell was filthy.

Bond was set at $2500, and Plaintiff arranged for a relative to pay the bond. After the bond was paid, Plaintiff was held for another hour while jail employees looked for the keys to her cell. After her release, she retrieved her car from the tow shop.

According to Plaintiff, on her release she suffered from "exhaustion, fatigue, fever, and pneumonia for some time." She contracted pneumonia again in October 2021, and states "[e]ach time it last for six or more months and results in a loss of productivity and ability to function."

Plaintiff unsuccessfully asked to have her bond reduced, citing her ties to the community. In Wilson County District Court, Plaintiff pled not guilty. She alleges the prosecutor would not respond to her discovery requests, and "believe[s] that I was being treated different from others so situated due to my previous battle on the stop sign ticket in Fredonia."

The charges against Plaintiff were subsequently dismissed.

## II.     Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move for dismissal of any claim for which the plaintiff has failed to state a claim upon which relief can be granted.[1] The court must decide "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.' "[2] A claim is facially plausible if the plaintiff pleads facts sufficient for the court to reasonably infer that the defendant is liable for the alleged misconduct.[3] The

---

[1] Fed. R. Civ. P. 12(b)(6).

[2] *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[3] *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

plausibility standard reflects the requirement in Rule 8 that pleadings provide defendants with fair notice of the nature of claims as well the grounds on which each claim rests.[4] Under Rule 12(b)(6), the court must accept as true all factual allegations in the complaint, but need not afford such a presumption to legal conclusions.[5]

"[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action."[6] Viewing the complaint in this manner, the court must decide whether the plaintiff's allegations give rise to more than speculative possibilities.[7] If the allegations in the complaint are "so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.' "[8] Generally, the Court is constrained by the allegations in the complaint when considering a motion to dismiss. However, "a document central to the plaintiff's claim and referred to in the complaint may be considered in resolving a motion to dismiss, at least where the document's authenticity is not in dispute."[9]

---

[4] *See Robbins v. Okla.*, 519 F.3d 1242, 1248 (10th Cir. 2008) (citations omitted); *see also* Fed. R. Civ. P. 8(a)(2).

[5] *Iqbal*, 556 U.S. at 678-79 ("The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully.") (citation omitted).

[6] *Twombly*, 550 U.S. at 555 (citations omitted).

[7] *See Iqbal*, 556 U.S. at 678.

[8] *Robbins*, 519 F.3d at 1247 (quoting *Twombly*, 550 U.S. at 570).

[9] *Utah Gospel Mission v. Salt Lake City Corp.*, 425 F.3d 1249, 1253-54 (10th Cir. 2005) (citations omitted).

Pro se complaints are held to "less stringent standards than formal pleadings drafted by lawyers."[10]  A pro se litigant is entitled to a liberal construction of his pleadings.[11]  If a court can reasonably read a pro se complaint in such a way that it could state a claim on which it could prevail, it should do so despite "failure to cite proper legal authority . . . confusion of various legal theories . . . or [Plaintiff's] unfamiliarity with pleading requirements."[12]  But it is not the proper role of a district court to "assume the role of advocate for the pro se litigant."[13]

Parties may amend pleadings "once as a matter of course" before trial if they do so within (A) twenty-one days of serving the pleading or (B) "if the pleading is one to which a responsive pleading is required," twenty-one days of service of a responsive pleading or a motion under Federal Rule of Civil Procedure 12(b), (e), or (f), whichever is earlier.[14]  Other amendments before trial are allowed "only with the opposing party's written consent or the court's leave."[15]  Courts "should freely give leave when justice so requires."[16]  Federal Rule of Civil Procedure 15 is intended "to provide litigants 'the maximum opportunity for each claim to be decided on its merits rather than on procedural niceties.' "[17]  Courts, however, may deny leave to amend based

---

[10] *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

[11] *See Trackwell v. U.S. Gov't*, 472 F.3d 1242, 1243 (10th Cir. 2007) ("Because Mr. Trackwell appears pro se, we review his pleadings and other papers liberally and hold them to a less stringent standard than those drafted by attorneys.").

[12] *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

[13] *Id*.

[14] Fed. R. Civ. P. 15(a)(1).

[15] Fed. R. Civ. P. 15(a)(2).

[16] *Id*.; *accord Forman v. Davis*, 371 U.S. 178, 182 (1962).

[17] *Minter v. Prime Equip. Co*., 451 F.3d 1196, 1204 (10th Cir. 2006) (quoting *Hardin v. Manitowoc–Forsythe Corp*., 691 F.2d 449, 456 (10th Cir. 1982)).

on undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, or futility of amendment.[18]  Whether to allow a proposed amendment, after the permissive period, addresses the sound discretion of the court.[19]

### III. Analysis

Plaintiff's proposed Amended Complaint omits any reference to 42 U.S.C. § 1985, and advances claims only under 42 U.S.C. § 1983; the § 1985 claim advanced in the original complaint is thus effectively abandoned.[20]  To bring a claim for relief under § 1983, a plaintiff must show that the defendant, acting under color of law, deprived the plaintiff of rights guaranteed under the Constitution.[21]  "Acting under color of state law as required by section 1983 is defined as the misuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law."[22]

Even considering the allegations in the proposed Amended Complaint, the Court finds Plaintiff has failed to present nonconclusory allegations that any Defendant violated her rights under § 1983.  The Court will address in turn the allegations against each Defendant.

### A.     Defendant Miller

---

[18] *Forman*, 371 U.S. at 182; *Wilkerson v. Shinseki*, 606 F.3d 1256, 1268 (10th Cir. 2010); *Minter*, 451 F.3d at 1204.

[19] *Forman*, 371 U.S. at 182.

[20] *See Blaurock v. Kansas*, 2012 WL 6681876, at *2 (D. Kan. 2012).

[21] 42 U.S.C. § 1983.

[22] *Brown v. Chaffee*, 612 F.2d 497, 501 (10th Cir.1979) (quotation omitted).

Plaintiff alleges that Defendant Miller violated her federal constitutional rights by employing excessive force, falsely arresting and imprisoning her, engaging in malicious arrest and abuse of process, and conducting an illegal search. Although Plaintiff makes additional allegations against Defendants generally, these either do not involve federally protected rights, or rise from the actions of persons who are not Defendants in the action. Thus, Plaintiff alleges that Miller's conduct was "extreme and outrageous." But a claim for intentional infliction of emotional distress does not state a federal constitutional violation and cannot form the basis for a § 1983 claim.[23] Further, the claim that Defendants violated Section 15 of the Kansas Bill of Rights is subject to dismissal because Kansas law does not authorize a private right of action for deprivations of state constitutional rights..[24]

Similarly, the only lasting injury from her experiences is the pneumonia Plaintiff claims was exacerbated by being left in the "freezing" jail cell. But the Wilson County Jail is under the control of the Wilson County Sheriff.[25] "Individual liability under § 1983 must be based on personal involvement in the alleged constitutional violation."[26] There is no plausible allegation in the proposed Amended Complaint that Officer Miller controlled the conditions of Plaintiff's confinement in the jail. Accordingly, the Court considers only those federally-grounded constitutional claims made by Plaintiff which are attributable to Defendant Miller's conduct.

---

[23] *Dunegan v. City of Council Grove, Kansas Water Dept.*, 77 F. Supp. 2d 1192, 1207 (D. Kan. 1999) ("liability under § 1983 cannot be based on a violation of state law alone," including tort of outrage)).

[24] *Youngblood v. Qualls*, 308 F. Supp. 3d 1184, 1203-l06 (D. Kan. 2018).

[25] *See* Kan. Stat. Ann. § 19-1903 ("The sheriff of the county by himself or deputy shall keep the jail, and shall be responsible for the manner in which the same is kept.").

[26] *Foote v. Spiegel*, 118 F.3d 1416, 1423 (10th Cir. 1997) (citing *Grimsley v. MacKay*, 93 F.3d 676, 679 (10th Cir. 1996)).

1.     **Excessive Force**

Plaintiff's claim of excessive force is reviewed under the Fourth Amendment's objective reasonableness standard.[27] This standard requires balancing " 'the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion.' "[28] Reasonableness is evaluated in light of all the circumstances of the case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether the suspect is actively resisting or attempting to evade arrest by flight.[29]

The proposed Amended Complaint differs from her original, entirely conclusory allegation of excessive force in part by presenting the claim now in the adverbial form — Officer Miller "forcefully" took her into custody.  Beyond this, however, the proposed Amended Complaint adds very little to Plaintiff's prior claims.  Suspected of shoplifting, she was restrained and handcuffed, made to wait in a police vehicle, and ultimately transported to the police station.  While she now adds that the handcuffing was uncomfortable, she alleges no claim of permanent or even temporary injury.  She alleges that Officer Miller physically held her, while acknowledging that this occurred as she tried to move away from him while he tried to talk to her.  As a result, she dropped her purse.

---

[27] *Graham v. Connor*, 490 U.S. 386, 388 (1989).

[28] *Scott v. Harris*, 550 U.S. 372, 383 (2007) (quoting *United States v. Place*, 462 U.S. 696, 703 (1983)).

[29] *Thomson v. Salt Lake Cnty.*, 584 F.3d 1304, 1313 (10th Cir. 2009) (citing *Graham*, 490 U.S. at 396).

Allegations of the application of *de minimis* force "fall short of what is required to establish a constitutional violation."[30] The Tenth Circuit has recognized that the absence of a serious injury is relevant to the excessive force analysis, and that the extent of the injury "may . . . provide some indication of the amount of force applied."[31] Here, Plaintiff's age and the minor nature of the offense involved certainly would not warrant any substantial use of physical force. But there were grounds for believing Plaintiff had committed a crime, she manifested an intent to break off communication with Miller by walking away from him, and the force employed by Defendant was limited, temporary, and left no substantial injury.[32] The nonconclusory allegations of Plaintiff present only *a de minimis* application of force, and fail to raise a plausible constitutional claim.

2. **False Arrest and Imprisonment**

"Arrest by police officers without probable cause violates the Fourth Amendment's guarantee of security from unreasonable searches and seizures, giving rise to a claim for false arrest under § 1983."[33] But conclusory allegations that there was no probable cause for an arrest are insufficient to state a claim for false arrest under § 1983.[34]

---

[30] *Marshall v. Milyard*, 415 F. App'x 850, 854 (10th Cir. 2011).

[31] *Id*. at 853 (citing *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010)).

[32] *See Donahue v. Wihong*, 948 F.3d 1177, 1197 (10th Cir. 2020) (finding no excessive force due to handcuffing when reasonable juror could not conclude plaintiff suffered a "non-de minimis" injury even when plaintiff sustained bruising); *McCormick v. City of Lawrence*, 325 F. Supp. 1191, 1205 (K. Kan. 2004) (finding no excessive force where plaintiff claimed his handcuffs were too tight and officer unnecessarily thrust down on them when plaintiff was resisting arrest).

[33] *Demster v. City of Lenexa, Kansas*, 352 F. Supp. 2d 1165, 1171 (D. Kan. 2005).

[34] *Townsend v. Marengo*, 2022 WL 266810, at *3 (D. Kan. 2022).

The proposed Amended Complaint remains conclusory as to the claims of false arrest and imprisonment. While Plaintiff alleges the probable cause affidavit is internally inconsistent, the supposed inconsistencies are minor and Plaintiff makes no plausible allegation that Defendant Miller made up the report.

She does not allege, for example, that the report was not independently made by Casey's employees the day before her arrest. The employees informed the police of the theft, and reported that the woman stealing the keys had been captured on video. Miller was the officer who investigated the report, and viewed the video. The following day a Casey's employee reported the key thief had returned to the store, and identified Plaintiff as the culprit. Plaintiff offers no plausible rationale for the Casey's employees to lie. She presents no argument that the key thief in the video was not only not her, but was a person so unlike her that Miller would have had to have known she was innocent.

### 3. Malicious Prosecution and Abuse of Process

"A § 1983 malicious prosecution claim requires a showing that: 1) the defendant caused plaintiff's continued confinement or prosecution; 2) the original action terminated in plaintiff's favor; 3) there was no probable cause to support the original arrest, continued confinement or prosecution; 4) the defendant acted with malice; and 5) plaintiff sustained damages."[35] A plaintiff presenting a claim of malicious prosecution must supply more than conclusory

---

[35] *Townsend v. Marengo*, 2022 WL 266810, at *3 (D. Kan. 2022). *See Margheim v. Buljko*, 855 F.3d 1077, 1085 (10th Cir. 2017) (quoting *Wilkins v. DeReyes*, 528 F.3d 790, 799 (10th Cir. 2008)).

allegations.[36]  "Unlike a false arrest or false imprisonmentlaim, malicious prosecution concerns detention only after the institution of legal process."[37]  "[I]t is incumbent upon a plaintiff to 'identify *specific* actions taken by *particular* defendants' in order to make out a viable § 1983 . . . claim."[38]  "[T]he chain of causation [in a malicious prosecution action] is broken by an indictment, absent an allegation of pressure or influence exerted by the police officers, or knowing misstatements made by the officers to the prosecutor."[39]

The common law tort of abuse of process provides the elements relevant for a federal cause of action pursuant to § 1983.[40]  "To set out a claim for the tort of abuse of process, plaintiff must allege that (1) defendants made an illegal, perverted or improper use of the process; (2) defendants had an ulterior purpose or motive for exercising the illegal, perverted or improper use of the process; and (3) plaintiff suffered damage from the irregularity."[41]  "The gist of tort of abuse of process is not commencing an action or causing process to issue without justification,

---

[36] *See Erikson v. Pawnee Cnty. Bd. of Cnty. Comm'rs*, 263 F.3d 1151, 1154-55 (10th Cir. 2001) (dismissing malicious prosecution claim based on conclusory allegations of an absence of probable cause).

[37] *Wilkins*, 528 F.3d at 798 (internal quotation, alteration, and citation omitted).

[38] *Pahls v. Thomas*, 718 F.3d 1210, 1226 (10th Cir. 2013) (quoting, and adding emphasis to, *Tonkovich v. Kan. Bd. of Regents*, 159 F.3d 504, 532-33 (10th Cir. 1998)).

[39] *Taylor v. Meacham*, 82 F.3d 1556, 1564 (10th Cir. 1996) (quoting *Reed v. City of Chicago*, 77 F.3d 1049 (7th Cir. 1996)); s*ee also Barham v. Town of Greybull Wyo*., 483 F. App'x 506, 509 (10th Cir. 2012) (Where plaintiff failed to allege "any pressure or influence or made any knowing misstatements to the prosecutor, and thus the chain of causation was broken by the prosecutor's decision to file charges as well as by the state court's decision to bind Plaintiff over at the preliminary hearing.").

[40] *See Stegall v. Great Am.Ins. Co*., 996 F. Supp. 1060, 1069 (D.Kan. 1998); *McShares Inc. v. Barry*, 266 Kan. 479, 494, 970 P.2d 1005 (Kan. 1998); *Erikson*, 263 F.3d at 1155 n.5.

[41] *Hall v. Brownrigg*, 2012 WL 3024716, at *6 (D. Kan. 2012) (citations omitted).

but misusing or misapplying process justified in itself, for an end other than that which it was designed to accomplish."[42]

> An action for abuse of process differs from an action for malicious prosecution in that the latter is concerned with maliciously causing process to issue, while the former is concerned with the improper use of process after it has been issued. Thus it is said in substance that the distinction between the two is that malicious use of process is the employment of process for its ostensible purpose, but without reasonable or probable cause, whereas the malicious abuse of process is the employment of a process in a manner not contemplated by law, or to obtain an object which such a process is not intended by law to effect.[43]

Applying these standards, the Court finds Plaintiff has failed to present plausible allegations of specific actions by Defendant Miller which amount to malicious prosecution or abuse of process. The Plaintiff was charged with theft and illegal parking by the Wilson County Attorney, in a criminal case which continued for more than a year before being ultimately dismissed. To the extent Plaintiff makes any specific allegation as to that prosecution, she alleges that the County Attorney prosecuted the criminal case as punishment for her earlier defense of a traffic case. As noted earlier, Defendant Miller is liable under § 1983 only for his own personal conduct. The Casey's employees complaints presented probable cause for Defendant Miller to believe that Plaintiff had committed a criminal offense, and for the County Attorney to prosecute the Plaintiff.

Plaintiff has failed to make plausible allegations Defendant Miller improperly caused her prosecution, a decision made by the County Attorney. And "the mere initiation of proceedings with or without justification does not constitute abuse of process," because "abuse of process

---

[42] *Good v. Bd. of Cnty. Com'rs of Shawnee Cnty., Kan.*, 331 F. Supp. 2d 1315, 1330 (D. Kan. 2004).

[43] *Jackson & Scherer, Inc. v. Washburn*, 209 Kan. 321, 496 P.2d 1358, 1366 (1972) (quoting 1 Am. Jur. 2d Abuse of Process, § 2 (1962)).

refers to the improper use of process *after* it has issued."[44]  Here, Plaintiff has made no allegation at all of Defendant Miller's participation in the criminal case after it began.

### 4. Unlawful Search

Defendant Miller initially moved to dismiss Plaintiff's claim that he violated her Fourth Amendment right to be free of unlawful search because the allegation was entirely conclusory, contending that any search after her arrest was properly conducted as an inventory of her vehicle's contents.  The proposed Amended Complaint now submitted by Plaintiff provides some additional allegations, but they do not materially alter the result.

"[A]n inventory search may be "reasonable" under the Fourth Amendment even though it is not conducted pursuant to a warrant based upon probable cause.  [I]nventory procedures serve to protect an owner's property while it is in the custody of the police, to insure against claims of lost, stolen, or vandalized property, and to guard the police from danger."[45]  Thus, "reasonable police regulations relating to inventory procedures administered in good faith satisfy the Fourth Amendment, even though courts might as a matter of hindsight be able to devise equally reasonable rules requiring a different procedure."[46]

The proposed Amended Complaint remains conclusory, and provides no plausible allegation to conclude that the Defendant Miller did not conduct a valid inventory search.  Plaintiff's emphasis in the proposed Amended Complaint is that (for some reason) she had

---

[44] *Jackson v. Kansas Cnty. Ass'n v. Multiline Pool*, 2005 WL 756773, at  (D. Kan. 2005) (citing *Stegall*, 996 F. Supp. at 1070; *Wolford v. Lasater*, 78 F.3d 484, 490 (10th Cir. 1996)).

[45] *Colorado v. Bertine*, 479 U.S. 367, 372 (1987) (citing *South Dakota v. Opperman*, 428 U.S. 364, 370 (1976)).

[46] *Id*. at 374 (citing *Illinois v. Lafayette*, 462 U.S. 640 (1983)).

parked her vehicle some 50 feet away from the store, parking so that the car was not on Casey's property. But, as discussed earlier, there was probable cause for Plaintiff's arrest for theft, and Miller further believed the car was illegally parked. The allegation that the car was not on Casey's property does not present a colorable basis for reasonably concluding that an inventory search was improper, and that her Fourth Amendment rights were violated.

**B.    Defendant City of Neodesha**

To impose § 1983 liability on the City for the actions of Defendant Miller, Plaintiff must show that he committed a constitutional violation, and that a City policy or custom was "the moving force" behind the constitutional violation.[47]  "To prevail under the failure-to-train approach, a plaintiff must show that the municipality made a 'deliberate or conscious choice' to not train its employees, and that the municipality was deliberately indifferent to its inhabitants' constitutional rights."[48] The flaws in policy or training must be "so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need."[49]  "In resolving the issue of a city's liability, the focus must be on adequacy of the training program in relation to the tasks the particular officers must perform. That a particular officer may be unsatisfactorily trained will

---

[47] *Myers v. Oklahoma County Bd. of County Comm'rs*, 151 F.3d 1313, 1318 (10th Cir. 1998) (citing *Monell v. Department of Social Services*, 436 U.S. 658, 695 (1978)).

[48] *Manzanares v. Roosevelt Cnty. Adult Det. Ctr.*, 331 F. Supp. 3d 1260, 1300 (D.N.M. 2018) (citing *City of Canton v. Harris*, 489 U.S. 378, at 388-89 (1989); *Collins v. City of Harker Heights*, 503 U.S. 115, 123-24 (1992)).

[49] *City of Canton*, 489 U.S. at 390.

not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program."[50]

Thus, to defeat the City's motion to dismiss, Plaintiff must supply plausible allegations "sufficient for this Court to reasonably infer that (1) the City implemented or executed policies or customs that led directly to the officer's allegedly unreasonable conduct, and (2) such policies or customs have a direct causal relationship with [her] alleged injury."[51] The "conclusory use of the phrases 'lack of proper training' and 'not protecting [the plaintiff],' without supporting factual content, is insufficient to state a claim" under § 1983.[52] Plaintiff has not made such a showing. The only specific factual allegations in the proposed Amended Complaint relate only to her specific interaction with Officer Miller and her arrest for taking the keys from Casey's General Store. Her claims that the City had inadequate policies or procedures, or that it inadequately trained Miller, are entirely conclusory.

Plaintiff does not meet the "rigorous standards of culpability and causation" required to hold a municipality liable for the actions of its employees,[53] and dismissal of the action against Defendant City is warranted.

## C.     Defendants Casey's General Stores and Casey's General Store - Neodesha

The Court finds that Plaintiff's proposed Amended Complaint does not state a claim under § 1983 against the Casey's Defendants. "To state a claim under § 1983, a plaintiff must

---

[50] *Id*. at 390-91.

[51] *Cutsinger v. City of Derby, Kan*., 2014 WL 4450158, at *2 (D. Kan. 2014) (citing *Graves v. Thomas*, 450 F.3d 1215, 1218 (10th Cir. 2006)).

[52] *Kelley v. Wright*, 2019 WL 6700375, at *6 (D. Kan. 2019).

[53] *See Board of Cnty. Com'rs of Bryan Cnty., Okla. v. Brown*, 520 U.S. 397, 405 (1997).

allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."[54] "The under-color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful."[55]

Here, Plaintiff alleges that employees of Casey's reported her for theft, and supplied the investigating officer with video footage of the incident. The following day, when she returned to the store, an employee again telephone the police, identified Plaintiff as the thief, and apparently identified the keys found in Plaintiff's vehicle as the set stolen from the store.

"A private individual or entity who reports a crime, provides information to the police, responds to questions by the police, and is a potential witness for the prosecution does not act under color of law."[56] The Tenth Circuit has observed that "[w]e know of no case in which the report of a state crime is action under color of state law under § 1983. The mere furnishing of information to police officers does not constitute joint action under color of state law which renders a private citizen liable under §§ 1983 or 1985."[57]

Plaintiff has provided no specific, plausible factual allegation which would support a finding that Casey's was acting under color of state law caused Plaintiff's arrest, or her subsequent prosecution, which was conducted by the County Attorney.

---

[54] *West v. Atkins*, 487 U.S. 42, 48 (1988) (citations omitted).

[55] *Barnett v. Hall, Estill, Hardwick, Gable, Golden & Nelson, P.C.*, 956 F.3d 1228, 1235 (10th Cir. 2020) (quotations and brackets omitted).

[56] *Walker v. Ware*, 2021 WL 256810, at *2 (W.D. Ark. Jan. 25, 2021) (citing *Moldowan v. City of Warren*, 578 F.3d 351, 399 (6th Cir. 2009).

[57] *Benavidez v. Gunnell*, 722 F.2d 615, 618 (10th Cir. 1983).

**D.     Supplemental State Claims**

Defendants present a variety of additional reasons for dismissal of Plaintiff's state law claims. However, the Court finds that it need not resolve the additional arguments advanced by Defendants, as the Court determines that there are no substantial grounds for retaining supplemental jurisdiction over these state law claims. "When all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims."[58] Here, Plaintiff has not articulated any reason for concluding that the present case should be an exception to this general rule.

**IT IS THEREFORE ORDERED** that Defendants' Motions to Dismiss (Doc. 14, 16) are GRANTED as provided in this Order; Plaintiff's Motion to Amend (Doc. 30) is DENIED as futile.

IT IS SO ORDERED.

Dated this 11th day of October, 2022.

This closes the case.

ERIC F. MELGREN
CHIEF UNITED STATES DISTRICT JUDGE

---

[58] *See Smith v. City of Enid*, 149 F.3d 1151, 1156 (10th Cir.1998)